<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **CONSTANTINO ZANFARDINO, Derivatively on Behalf of Nominal Defendant ZERIFY, INC.,** | |
| *Plaintiff,* | **Civil Action No. 22-7258** |
| v. | **OPINION** |
| **MARK L. KAY, ROMARAO PEMMARAJU, AND GEORGE WALLER,** | |
| *Defendants,* | |
| **and** | |
| **ZERIFY, INC.,** | |
| *Nominal Defendant.* | |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court by way of Motions to Dismiss (the "Motions") filed by Defendants Mark L. Kay ("Kay"), Romarao Pemmaraju ("Pemmaraju"), and George Waller ("Waller," and together with Kay and Pemmaraju, "Defendants"), ECF No. 19, and Nominal Defendant Zerify, Inc. ("Zerify" or the "Company"), ECF No. 22. Plaintiff Constantino Zanfardino ("Plaintiff") opposes the Motions. ECF No. 20. For the reasons set forth herein, the Motions are **GRANTED** in part and **DENIED** in part.

I.  **BACKGROUND**

    **A. Factual Background**

        Zerify is a software development and services organization that is incorporated in Wyoming. Compl. ¶¶ 6, 11. Defendants are executives and sole directors of the Company who

reside in Pennsylvania, New Jersey, and New York.  Id. ¶¶ 7–10.  Plaintiff is a shareholder who resides in California.  Id. ¶ 5.  Plaintiff pursues this derivative action against Defendants and on behalf of Zerify for alleged wrongdoing in the management of the Company.  Id. ¶ 1.

Plaintiff alleges that Defendants engaged in four forms of wrongdoing as managers of Zerify.  First, Plaintiff alleges that Defendants cemented their control of the Company by issuing preferred stock to themselves and approving reverse splits.  Second, Plaintiff alleges that Defendants received excessive compensation from Zerify by issuing common stock, warrants, and other shares to themselves despite poor organizational finances.  Third, Plaintiff alleges that Defendants issued shares to Auctus Fund LLC ("Auctus") and Crown Bridge Partners LLC ("Crown Bridge") that were not commensurate with services rendered to the Company.  Fourth, Plaintiff alleges that Defendants used Zerify resources to acquire equity in BlockSafe Technologies, Inc. ("BlockSafe") for themselves and then engineered an agreement between the Company and BlockSafe for their own benefit.

### 1.  Issuance of Preferred Stock and Approval of Reverse Splits

Zerify was initially incorporated in New Jersey as Strikeforce Technical Services Corporation and Strikeforce Technologies, but the Company was ultimately redomiciled in Wyoming, where it created Series A preferred stock with voting rights.  Id. ¶¶ 12–13, 15. Thereafter, Defendants obtained 80% of the voting rights in Zerify by issuing three shares of preferred stock to themselves for little-to-no consideration.  Id. ¶¶ 16–17.  The preferred stock issuance "set the stage" for reverse splits, which were approved "in connection with" other share issuances that cemented Defendants' control of the Company.  Id. ¶¶ 18–21, 22–23, 33.

### 2. Issuance of Common Stock, Other Shares, and Warrants

Since its founding, Zerify has been in poor financial health.  Id. ¶ 14.  In 2020 and 2021, the Company's losses exceeded $10 million and $17 million respectively, with more than $5 million in SG&A expenses attributable to increased employee compensation.  Id. ¶¶ 26, 63, 68–71, 80.  Despite these conditions, Defendants received excessive compensation by issuing common stock to themselves upon the cashless exercise of options.  Id. ¶¶ 24–25, 38–42, 59–63, 72, 77–81, 87–88.  For example, over $2 million worth of common stock was issued to Pemmaraju, id. ¶¶ 24, 60, and over 9 million shares were issued to Waller, id. ¶¶ 41, 78.  Likewise, Defendants issued other shares to themselves as compensation, id. ¶¶ 19, as well as warrants, which "set[] the stage for additional stock compensation" at a price that could be adjusted by the directors, id. ¶¶ 34–37.

### 3. Auctus and Crown Bridge Transactions

Zerify issued tens of million shares of common stock to Auctus in connection with financing services, debts, and cancelled warrants.  Id. ¶¶ 27–28, 64–65, 73–74, 77–78.  However, the value of certain shares did not account for reverse splits, id. ¶ 66, and the more than $6 million value of other shares eclipsed the less than $5 million financing rendered by Auctus, id. ¶¶ 29, 75–76.  Similarly, the Company issued over $1 million worth of common stock to Crown Bridge to settle a $45,000 debt, id. ¶¶ 50–51, 53, 58, and it did so without adjusting the price to reflect a reverse split, id. ¶ 52.  Around this time, the SEC also sued Crown Bridge for "the offering of penny stocks" in violation of securities laws.  Id. ¶¶ 54–57.

### 4. BlockSafe Transactions

Zerify utilized $1 million from the Auctus financing to acquire equity in BlockSafe.  Id. ¶ 30.  Although the transaction was made possible with Company resources, Defendants acquired for themselves a 31% equity interest, to be held alongside the 69% interest acquired by Zerify.  Id.

¶¶ 30, 32, 67, 82–86.  Defendants then engineered an agreement between BlockSafe and the Company to secure for themselves "a $36,000 per month 'management fee'" and "a $5 million fee payable over 5 years."  Id. ¶¶ 31, 67.

### B. Procedural Background

On June 10, 2022, Plaintiff issued a written demand to Defendants.  Id. ¶¶ 43–44.  Specifically, Plaintiff demanded that Defendants "investigate breaches of fiduciary duty, mismanagement, and other violations of law" by the directors and "consider any remedies to be sought as a consequence" of the wrongdoing.  ECF No. 1.2 at 2.  As a basis for the demand, Plaintiff stated that Defendants used preferred stock to retain control of Zerify and approve reverse splits, "which massively diluted the shareholders and made the shareholders' investments in [the Company's] shares worthless."  Id. at 2–3.  Plaintiff also stated that "select individuals or entities received shares in [Zerify] to make them whole," and he posed questions to Defendants about various transactions.  Id. at 3.

On August 19, 2022, Defendants rejected Plaintiff's demand.  Compl. ¶¶ 47–48.  In the rejection, Defendants indicated that the transactions in question were already disclosed and that an additional disclosure was filed to address Plaintiff's concerns.  ECF No. 1.4 at 2.  As Defendants' responses illustrated, Plaintiff's concerns were related to compensation, the issuance of common stock and warrants, and the Auctus, Crown Bridge, and BlockSafe transactions.  Id. at 3–6.  Defendants concluded that "no further action [was] warranted" regarding these issues because the disclosures did not show "any wrongdoing" on the part of the Company or its directors.  Id. at 6.

On December 13, 2022, Plaintiff filed this lawsuit against Defendants and on behalf of Zerify for breach of fiduciary duties, unjust enrichment, and corporate waste.  Compl. ¶¶ 110–26.

Defendants and the Company both moved to dismiss, ECF Nos. 19, 22, and Plaintiff opposed the Motions, ECF No. 20.

## II.   LEGAL STANDARDS

### A.   Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a complaint for failure to state a claim to relief.  Fed. R. Civ. P. 12(b)(6).  For purposes of a motion to dismiss, the district court accepts the facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party.  N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J., 760 F.3d 297, 302 (3d Cir. 2014).  While the complaint need not contain detailed factual allegations, Fed. R. Civ. P. 8(a), it must contain "enough facts to state a claim to relief that is plausible on its face," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The complaint is facially plausible if it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Thus, "conclusory or bare-bones allegations will no longer survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citations omitted).

### B.   Federal Rule of Civil Procedure 23.1(b)(3)

Under Federal Rule of Civil Procedure 23.1(b)(3), a derivative complaint must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3).  "Although Federal Rule of Civil Procedure 23.1 provides the procedural vehicle for addressing the adequacy of a derivative plaintiff's pleadings, [t]he substantive requirements of demand are a matter of state law." Freedman v. Redstone, 753 F.3d 416, 424 (3d Cir. 2014) (alteration in original) (citations omitted).

So too, "the power of a board of directors to continue or to discontinue a cause of action brought on behalf of the corporation is governed by the state law, or the business judgment rule, of the state of incorporation." Abrams v. Koether, 766 F. Supp. 237, 249 (D.N.J. 1991) (citing Kamen v. Kemper Fin. Servs., Inc., 500 U.S. 90, 101 (1991)).

Under Wyoming law,[1] a derivative proceeding cannot commence until "a written demand has been made upon the corporation to take suitable action" and "ninety (90) days have expired from the date the demand was made unless the shareholder has earlier been notified that the demand has been rejected by the corporation." Wyo. Stat. Ann. § 17-16-742(a). If the demand has been rejected, "the complaint shall allege with particularity facts establishing . . . that a majority of the board of directors did not consist of qualified directors at the time the determination was made." Wyo. Stat. Ann. § 17-16-744(c)(i). Alternatively, the derivative proceeding will be dismissed if a majority vote of qualified directors "has determined in good faith after conducting a reasonable inquiry . . . that the maintenance of the derivative proceeding is not in the best interests of the corporation." Wyo. Stat. Ann. §§ 17-16-744(a). A qualified director is one who does not have "a material interest in the outcome of the proceeding" or "a material relationship with a person who has such an interest." Wyo. Stat. Ann. § 17-16-143(a)(i).

## III. ANALYSIS

### A. Demand Refusal

Defendants argue that this lawsuit must be dismissed because Plaintiff fails to plead that his demand was wrongfully refused. ECF No. 19.1 at 17–24; ECF No. 21 at 7–11.[2] Plaintiff

---

[1] The parties agree that Wyoming law governs the demand. See ECF No. 19.1 at 17; ECF No. 20 at 12; see also ECF No. 22 at 17–18.

[2] Zerify also argues that Plaintiff fails to satisfy the pleading requirements for a demand. ECF No. 23 at 4–5.

responds that he has alleged particular facts establishing that the directors were not qualified.  ECF No. 20 at 12–17.  Defendants, however, dispute the adequacy of these allegations.  ECF No. 21 at 11–12.

The Court agrees with Plaintiff that he has satisfied the pleading requirements for demand refusal.  The decision to not "pursue a claim through litigation is a matter for the business judgment of the Board," and where decisions are matters of business judgment, the allegations must rebut the presumption that the directors acted "on an informed basis and with a good faith belief that the decisions [would] serve the best interests of the corporation."  Mueller v. Zimmer, 124 P.3d 340, 351–53 (Wyo. 2005) (citations omitted).[3]  However, rebuttal of the business judgment presumption is only one of two means to satisfy the pleading requirements for demand refusal.  See Wyo. Stat. Ann. § 17-16-744(c)(ii).  The other means is to establish that Defendants were not qualified directors when the demand was refused.  Plaintiff has alleged sufficient particular facts to make this showing.  The allegations incorporate Plaintiff's demand, which not only described Defendants' participation in the use of preferred stock, approval of reverse splits, and transfer of other shares, but also expressed concern over the issuance of common stock and warrants, as well as the Auctus, Crown Bridge, and BlockSafe transactions.  The allegations further indicate that the directors engaged in wrongdoing in connection with these transactions.  Since investigation and remediation of these transactions was requested, Defendants had a "material interest" in the outcome of the proceeding when the demand was refused.[4]

---

[3] At most, Plaintiff alleges that Defendants' disclosures did not identify two warrant holders in February 2021, Compl. ¶ 61, and that the disclosures did not address the absence of directors' tax forms for 2021, id. ¶ 89.

[4] Under Delaware law, a plaintiff who issues a demand to directors concedes that the directors are disinterested.  See Rales v. Blasband, 634 A.2d 927, 936 n.12 (Del. 1993).  However, Defendants provide no authority to demonstrate that this rule applies under Wyoming law.  See ECF No. 19.1 at 22–24 (citing

### B. Breach of Fiduciary Duties

Demand refusal aside, Defendants argue that the claim for breach of fiduciary duty must be dismissed because Plaintiff violates the rule against group pleading and fails to allege specific facts rebutting the business judgment rule or establishing harm.  ECF No. 19.1 at 24–33; ECF No. 21 at 13–18.[5]  Plaintiff responds that he does not engage in group pleading, that the business judgment presumption does not apply to interested directors, and that harm is adequately alleged. ECF No. 20 at 17–28.  Defendants, however, dispute the inapplicability of the business judgment protection.  ECF No. 21 at 12–13.

As an initial matter, the Court agrees with Plaintiff that the rule against group pleading has not been violated.  Under the group pleading rule, courts in this District will dismiss a complaint that "does not place [d]efendants on notice of the claims against each of them," such as a complaint that alleges negligent manufacture and distribution of a product, without clarifying "which defendant is the manufacturer or distributor" of the product.  Mills v. Ethicon, Inc., 406 F. Supp. 3d 363, 386–87 (D.N.J. 2019).  Likewise, courts in this District will dismiss a complaint that "lumps" defendants together if it "does not allege any facts to permit an inference that [an individual defendant] should equally be liable," such as a complaint that implies that an individual defendant was uninvolved.  MHA, LLC v. Amerigroup Corp., 539 F. Supp. 3d 349, 364–65 (D.N.J. 2021).  Here, Plaintiff has placed Defendants on notice of the claims against each of them, as the allegations suggest that the directors played identical or substantially similar roles in breaching their fiduciary duties.  In other words, Plaintiff "does not attribute wrongdoing indiscriminately to

---

Levine v. Liveris, 216 F. Supp. 3d 794 (E.D. Mich. 2016) and Espinosa ex rel. JPMorgan Chase & Co. v. Dimon, 807 F.3d 502 (2nd Cir. 2015), which apply Delaware law, rather than Wisconsin law).

[5] Zerify also argues that Plaintiff fails to allege specific facts showing breach of fiduciary duties or damages. ECF No. 22 at 19–20.

multiple parties," but "alleges that [Defendants] have committed multiple, similar acts" of wrongdoing.  loanDepot.com v. CrossCountry Mortgage, Inc., 399 F. Supp. 3d 226, 236 (D.N.J. 2019).  Similarly, Plaintiff has alleged facts to permit an inference that each Defendant should equally be liable, and there is no allegation that any director was uninvolved.  Instead, the allegations indicate that Defendants committed the wrongdoing through the unitary mechanism of the Board, and some allegations even reference wrongdoing by individual directors Pemmaraju and Waller.[6]

### a. BlockSafe Transactions and Issuance of Common Stock, Other Shares, and Warrants

Turning to the substance of the allegations, the Court agrees with Plaintiff that the business judgment rule does not apply to the BlockSafe transactions or to the issuance of common stock, other shares, and warrants.  The business judgment presumption may be overcome if the allegations show that the directors were not "disinterested and independent" with respect to their decision.  Mueller, 124 P.3d at 351.  Once the allegations illustrate that the directors were interested—where, for example, the directors "stood on both sides of [an] agreement" or "doubled their [own] salaries"—the burden shifts to each "interested director to prove that he acted in good faith and that the contested transactions were fair to the corporation."  Lynch v. Patterson, 701 P.2d 1126, 1131–1133 (Wyo. 1985).  Here, Plaintiff alleges that Defendants stood on both sides of the agreement between BlockSafe and Zerify because the directors held a substantial interest in

---

[6] The cases cited by Defendants are inapposite.  See ECF No. 19.1 at 25; ECF No. 22 at 13.  In one case, the complaint contained no substantive allegations about any individual defendant, and the court explicitly limited its holding to the facts alleged.  See Pietrangelo v. NUI Corp., Civ. No. 04-3223, 2005 WL 1703200, at *10 & n.14 (D.N.J. July 20, 2005).  In another case, the complaint contained no allegations to demonstrate that an individual defendant was part of the group for which the misconduct was alleged.  See ICD Capital, LLC v. CodeSmart Holdings, Inc., 842 Fed. Appx. 705, 707 (2d Cir. 2021).

both entities when they engineered the transaction.[7]  Likewise, Plaintiff alleges that Defendants increased their own compensation by issuing common stock, other shares, and warrants to themselves, and that the directors used Company resources to acquire personal equity in BlockSafe.[8]  Both sets of allegations plainly show that Defendants were interested.

Since the business judgment rule does not afford protection, Plaintiff has made a prima facie showing that Defendants breached their fiduciary duties in connection with the BlockSafe transactions and the issuance of common stock, other shares, and warrants.  "To establish a claim for breach of fiduciary duties, the plaintiff must show a duty based on a fiduciary relationship, breach of the duty, and the breach caused him damage."  Gowdy v. Cook, 455 P.3d 1201, 1208 (Wyo. 2020).  The parties do not contest that "directors have a fundamental duty of loyalty and fiduciary responsibility to their corporation," Squaw Mountain Cattle Co. v. Bowen, 804 P.2d 1292, 1296 (Wyo. 1991), athnd Plaintiff has established a breach of the duty because the allegations have shifted the burden to Defendants to prove the fairness of their decisions. Moreover, the allegations support the inference that the BlockSafe transactions caused damage to Zerify because the directors acquired personal equity interests and secured fees that properly

---

[7] Even if Defendants could not exercise direct control through their 31% stake in BlockSafe, the directors could exercise indirect control through Zerify, which held a 69% stake in BlockSafe.  See also Acorn v. Moncecchi, 386 P.3d 739, 752 (Wyo. 2016) ("[T]he fact that the manager of an LLC enters into a contract with another entity owned, even partially, by the manager raises the question of whether that action was disinterested.").  Nevertheless, the Court acknowledges that the facts of Lynch are slightly different than the facts here.  In Lynch, the court found that the defendants breached their fiduciary duties to a company because they used their direct control over that same company to engineer payments to themselves.  701 P.2d at 1128–29.  By contrast, Plaintiff alleges that Defendants breached their fiduciary duties to one company (Zerify) because they used their indirect control over another company (BlockSafe) to engineer payments to themselves.  Despite these differences, Defendants resemble the defendants in Lynch in a crucial sense—both sets of directors "engaged in self-serving transactions" that relied upon corporate resources to secure fees for themselves.  701 P.2d at 1129.

[8] In this respect, Lynch is on-all-fours with the instant case, as each director essentially "approve[d] his own compensation."  Id. at 1131.

belonged to the Company, which made the initial investment in BlockSafe.[9]  Similarly, the allegations support the inference that the issuance of common stock, other shares, and warrants caused damage because the directors received compensation that was excessive in light of poor organizational finances.[10]

### b. Auctus and Crown Bridge Transactions, Issuance of Preferred Stock, and Approval of Reverse Splits

Nevertheless, the Court agrees with Defendants that the business judgment presumption protects the Auctus and Crown Bridge transactions, the issuance of preferred stock, and the approval of reverse splits.  There is no indication whatsoever that the Auctus and Crown Bridge transactions involved self-dealing.  Instead, Plaintiff alleges that the shares issued to these entities were not commensurate with the services rendered to Zerify.  Likewise, there are insufficient facts to show that the issuance of preferred stock or the approval of reverse splits was self-serving.  Although Plaintiff alleges that Defendants issued the preferred stock to themselves, the allegations also state that the directors gained control of the Company through the preferred stock.  Without greater clarity regarding Defendants' net change in ownership of Zerify, the Court cannot infer that the directors were in a position to effectuate the issuance on behalf of the Company.  Similarly, Plaintiff alleges that the reverse splits were illegitimate attempts to facilitate self-dealing, Compl. ¶ 23, but Plaintiff does not adequately allege how the reverse splits could have functioned in this manner or otherwise impacted shareholder value, as asserted in the demand, see JASON LAWS, An

---

[9] Defendants contend that only Zerify secured fees from the agreement with BlockSafe.  ECF No. 19.1 at 27.  However, at this stage, the Court must accept the factual allegations as true.  N.J. Carpenters, 760 F.3d at 302.

[10] Defendants contend that there is no alleged "causal link" between the issuance of common stock and the harm because Zerify has been in poor financial health since its founding.  Id. at 29.  However, the allegations clarify that losses were especially staggering in 2020 and 2021, when certain expenses were attributable to increased employee compensation.

Introduction to Equity Markets, in ESSENTIALS OF FINANCIAL MANAGEMENT 16 (2018) ("[A] reverse stock split has no effect on the overall value of what shareholders own.").[11]  Nor do any allegations show that the directors were uninformed or acted in bad faith.

Since the business judgment rule applies, the Court cannot find that Defendants breached their fiduciary duties in connection with the Auctus and Crown Bridge transactions, the issuance of preferred stock, or the approval of reverse splits.

### C.  Unjust Enrichment

Defendants also argue that the claim for unjust enrichment must be dismissed because the duplicative claim for breach of fiduciary duties has failed and quasi-contractual relief is precluded by the existence of a corporate charter.  ECF No. 19.1 at 34; ECF No. 21 at 18–19.  Plaintiff responds that the claim for breach of fiduciary duties is not necessarily duplicative, that the claim has not failed, and that the corporate charter is not a contract precluding relief.  ECF No. 20 at 29–31.

### a.  BlockSafe Transactions and Issuance of Common Stock, Other Shares, and Warrants

The Court agrees with Plaintiff that the claim for unjust enrichment may proceed, but only as to the BlockSafe transactions and the issuance of common stock, other shares, and warrants. "One seeking damages based on unjust enrichment must prove four elements: (1) Valuable services were rendered, or materials furnished, (2) to the party to be charged, (3) which services or materials were accepted, used and enjoyed by the party, and, (4) under such circumstances which reasonably notified the party to be charged that the plaintiff, in rendering such services or

---

[11] Any explanation provided in the opposition brief must be disregarded, see, e.g., ECF No. 20 at 23, as "Plaintiff cannot amend the [complaint] through a brief," Coda v. Constellation Energy Power Choice, LLC, 409 F. Supp. 3d 296, 302 (D.N.J. 2019).

furnishing such materials, expected to be paid by the party to be charged." Elec. Wholesale Supply Co., Inc. v. Fraser, 356 P.3d 254, 261 (Wyo. 2015) (citations omitted). Here, Plaintiff alleges that valuable services or materials were directed to Defendants in connection with the BlockSafe transactions and the issuance of common stock, other shares, and warrants. Additionally, Plaintiff alleges that organizational finances were poor and that losses were especially staggering in 2020 and 2021, when certain expenses were attributable to increased employee compensation. Therefore, the Court can infer that Defendants were on notice that Zerify expected greater consideration than it received. Since the elements have been pled and no contract governs these contested transactions, relief for unjust enrichment is available with regard to the BlockSafe transactions and issuance of common stock, other shares, and warrants.[12]

### b. Auctus and Crown Bridge Transactions, Issuance of Preferred Stock, and Approval of Reverse Splits

As to the Auctus and Crown Bridge transactions, the issuance of preferred stock, and the approval of reverse splits, the Court agrees with Defendants that the claim for unjust enrichment must be dismissed. As an initial matter, these contested transactions cannot sustain the duplicative claim for breach of fiduciary duties.[13] Breach of fiduciary duties aside, these contested transactions do not meet the standard for unjust enrichment. As noted, an approval of reverse splits does not appear to render valuable services or furnish materials to any one party at the expense of another. Although the Auctus and Crown Bridge transactions involved valuable services and materials,

---

[12] Under Wyoming law, "the unjust enrichment remedy is not available when an express contract exists." Sowerwine v. Keith, 997 P.2d 1018, 1021 (Wyo. 2000). However, Defendants provide no authority to demonstrate that a corporate charter should be treated as an express contract for purposes of unjust enrichment.

[13] The claim for unjust enrichment is duplicative because it merely incorporates prior allegations by reference, ECF No. 1 ¶ 121, and otherwise rehashes factual allegations that form the basis of the other causes of action, id. ¶¶ 122–26.

these benefits were not directed at the party to be charged—here, Defendants.  So too, the preferred stock may have directed a benefit to Defendants, but without more factual detail about the issuance, the Court cannot infer that the directors were on notice that the Company expected greater consideration than it received.  As such, relief for unjust enrichment is unavailable with regard to the Auctus and Crown Bridge transactions, the issuance of preferred stock, and the approval of reverse splits.

### D.  Corporate Waste

Defendants further argue that the claim for corporate waste must be dismissed because no specific factual allegations establish that the contested transactions were patently wasteful.  ECF No. 19.1 at 33; ECF No. 21 at 18.  Plaintiff responds that he has alleged specific facts to show that the contested transactions benefited the directors at the expense of Zerify and forced the Company to overpay for services.  ECF No. 20 at 28–29.

The Court agrees with Defendants.  "To recover on a claim of corporate waste, the plaintiffs must shoulder the burden of proving that the exchange was so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration."  In re Walt Disney Co. Derivative Litig., 906 A.2d 27, 74 (Del. 2006) (citations omitted).  "The pleading burden on a plaintiff attacking a corporate transaction as wasteful is necessarily higher than that of a plaintiff challenging a transaction as 'unfair' as a result of the directors' conflicted loyalties or lack of due care."  Harbor Fin. Partners v. Huizenga, 751 A.2d 879, 892 (Del. Ch. 1999).[14]  Here, Plaintiff only establishes that Defendants were conflicted but

---

[14] Since Wyoming has not addressed the doctrine of corporate waste, the Court looks for guidance to Delaware law, which often serves as a touchstone for analysis in derivative actions.  Indeed, both parties apply Delaware law in their analyses of the corporate waste doctrine.  See ECF No. 19.1 at 33; ECF No. 20 at 29; ECF No. 21 at 18.

does not otherwise rebut the presumption that the directors acted with due care.  Absent specific factual allegations that establish the inadequacy of the consideration in any of the contested transactions, Plaintiff fails to plead corporate waste.

## IV.   CONCLUSION

For the reasons set forth herein, the Motions are **GRANTED** in part and **DENIED** in part**.** The claims for breach of fiduciary duties and unjust enrichment are **DISMISSED** as to the allegations concerning the Auctus and Crown Bridge transactions, the issuance of preferred stock, and the approval of reverse splits, but not as to the allegations concerning the BlockSafe transactions and the issuance of common stock, other shares, and warrants.  The claim for corporate waste is **DISMISSED** as to all the allegations. The dismissals are without prejudice to the filing of an Amended Complaint within thirty days that addresses the deficiencies set forth herein.